UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHEENA SMALL,                          )
                                       )
    Plaintiff,                         )
                                       )
v.                                     )    No. 3:24-CV-500-DCP
                                       )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
    Defendant.                         )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. On December 20, 2024, Plaintiff Sheena Small ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying her application for social security disability insurance benefits and supplement security income [Doc. 1]. For the reasons set forth below, the Court will **AFFIRM** the decision of the Commissioner.

**I.    PROCEDURAL HISTORY**

On November 18, 2021,[1] Plaintiff filed for Disability Insurance Benefits, and for Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging that she has been disabled since May 30, 2020 [Tr. 215 & 222].[2] After her claims were denied initially [*id.* at 71 & 90] and upon reconsideration [*id.* at 111 & 124], Plaintiff requested a hearing [*id.* at 154]. On October 17, 2023, Plaintiff, represented by counsel, appeared

---

[1]    The ALJ represents that the date Plaintiff filed was October 5, 2021 [Tr. 19], but the Court notes that the date reflected on the application itself is November 18, 2021 [Tr. 215, 222].

[2]    Plaintiff subsequently amended her alleged onset date to October 1, 2021 [Tr. 19 (citing Tr. 238)].

before Administrative Law Judge James Dixon ("the ALJ") by telephone for a hearing on August 8, 2023 [*Id.* at 38–70]. On December 6, 2023, the ALJ found Plaintiff was not disabled [*Id.* at 19–32]. The Appeals Counsel denied Plaintiff's request for review [*id.* at 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on December 20, 2024, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. Plaintiff filed her Brief [Doc. 15], and the Commissioner filed a response [Doc. 17]. The matter is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, [s]he is not disabled.

2. If claimant is not doing substantial gainful activity, h[er] impairment must be severe before [s]he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous

2

> period of at least twelve months, and h[er] impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent h[er] from doing h[er] past relevant work, [s]he is not disabled.
>
> 5. Even if claimant's impairment does prevent h[er] from doing h[er] past relevant work, if other work exists in the national economy that accommodates h[er] residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), [s]he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite her limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since October 1, 2021, the alleged onset date (20 C.F.R §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: other and unspecified arthropathies, disorder of the skeletal spine, obesity, anxiety and obsessive-compulsive disorders, and trauma and stress related disorders (20 C.F.R §§ 404.1520(c) & 416.920(c)).

3

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Pt. 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except lifting/carrying (including upward pulling) 50 pounds occasionally, 25 pounds frequently. Stand/walk/sit (with normal breaks) about 6/8, each. Unlimited pushing/pulling (including hand/foot controls) within exertional limitations. Frequent postural activities except no more than occasional climbing of ladders, ropes, or scaffolds. No manipulative, visual, communicative, or environmental limitations. Able to understand, remember and carry out simple tasks and instructions. Able to engage in occasional social interactions.

6. The claimant is unable to perform any past relevant work (20 C.F.R §§ 404.1565 & 416.965).

7. The claimant was born on April 20, 1983, and was 38 years old, which is defined as a younger individual age 18–49, on the amended alleged disability onset date (20 C.F.R §§ 404.1563 & 416.963).

8. The claimant has at least a high school education (20 C.F.R §§ 404.1564 & 416.964).[3]

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (SSR 82-41 and 20 C.F.R. Pt. 404, Subpart P. App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R §§ 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2021, through the date of this decision (20 C.F.R. 404.1520(g) & 416.920(g)).

[Tr. 22–32 (citations cleaned up)].

---

[3] The Court notes that beginning with this finding of fact and conclusion of law, the Transcript misnumbers the list [*See* Tr. 31]. The Court will proceed with the correct numbering.

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by

substantial evidence, the Court does not try the case de novo, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving h[er] entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

IV. ANALYSIS

Plaintiff presents one issue on appeal: that "the Commissioner erred as a matter of law by failing to account for Plaintiff's moderate limitations in adapting and managing herself in formulating the RFC" [Doc. 15 p. 9]. Plaintiff notes that "the ALJ concluded that Plaintiff had *moderate* limitations in all 4 Paragraph B criteria, including in adapting and managing herself" [Doc. 15 p. 11 (citing Tr. 23–24) (emphasis in original)]. She argues that the while the ALJ specifically wrote that he "'accommodated for such in the residual functional capacity' . . . the RFC does not contain any corresponding limitations that account for moderate limitations in the domain of adapting and managing oneself" [*Id.* at 11–13 (quoting Tr. 30)]. She maintains that "[i]t is internally inconsistent for the ALJ to conclude that moderate limitations in adapting and

6

managing exist but that the Plaintiff would somehow be able to adapt and manage in a work setting without any limitations" [*Id.* at 15]. Plaintiff suggests that limitations in the RFC should have included, for example, "limiting [her] to 'infrequent changes in the routine work environment that are gradually introduced' and/or 'being limited to tasks that require little to no independent judgment'" [*Id.*]. She asserts that failing to do so warrants remand [*Id.*].

The Commissioner responds by clarifying that an "ALJ is not required to include a paragraph B finding as part of [his] RFC determination" [Doc. 17 at 4 (citing *Russell v. Comm'r of Soc. Sec.,* No. 2:23-CV-68, 2024 WL 3470850, at *6 (E.D. Tenn. July 19, 2025) (internal citations omitted)]. The Commissioner contends that the ALJ's RFC determination included proper consideration of Plaintiff's mental impairments and was supported by substantial evidence [*Id.* at 3–4]. In addition, the Commissioner emphasizes that Plaintiff does not challenge the ALJ's assessment of the mental health related opinions of record and that the ALJ "specifically concluded that the RFC accommodated for the 'moderate' limitations found at steps two and three" [*Id.* at 6 (citing Tr. 30)].

At Step Three, in analyzing the severity of Plaintiff's mental impairments to determine whether they met or equaled a listed impairment, the ALJ considered the four broad functional areas known as the "paragraph B" criteria [Tr. 23–24]. He found that Plaintiff had moderate limitations in all four areas, including in adapting or managing oneself [*Id.* at 24]. The area of "adapting and managing oneself" refers to the ability to "regulate emotions, control behavior and maintain well-being in a work setting." 20 C.F.R., Pt. 404, Subpt. P, App'x, § 12.00(E)(4).

In determining that Plaintiff had experienced a moderate limitation in the ability to adapt and manage herself, the ALJ considered Plaintiff's report of difficulties but also discussed conflicting evidence. The ALJ explained:

7

> The claimant reported that she does not handle stress or changes in routine well. She tries to paint to alleviate her stress. She, however, has reported the ability to live with her parents and daughters, interact with her sisters, perform personal [sic] needs, and get along with others. Although the claimant reported significant problem performing her activities of daily living in her Adult Function Report, at the psychological consultative examination, the claimant reported the ability to prepare elaborate meals, wash dishes, vacuum, sweep, and do laundry. She used to have a driver's license but lost it about a year ago because of a ticket. Psychological consultative examiner Dr. Hopko noted that she appeared emotionally dysregulated and cried. She, however, was cooperative and appeared able to follow written and spoken instructions. Meanwhile, the objective evidence in the record showed no problem getting along well with providers and staff, no problems with grooming and hygiene, and no problems with temper control.

[Tr. 24 (citing Tr. 83, 346–536, 538–805, 38–70)].

At the end of the Step Three analysis, the ALJ clarified that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment" and that mental RFC used at Steps Four and Five require "a more detailed assessment of the areas of mental functioning" [*Id.*]. He indicated that the RFC assessment "reflects the degree of limitation [he] has found in the 'paragraph B' mental function analysis" [*Id.*]. Later, in assessing Plaintiff's RFC, the ALJ implemented mental limitations, including that Plaintiff is "[a]ble to understand, remember and carry out simple tasks and instructions [and] engage in occasional social interactions" [*Id.*].

While Plaintiff contends that it is inconsistent for the ALJ to conclude that Plaintiff has moderate limitations in adapting and managing but not formulate specific limitations for those in a work setting, nothing in the regulations requires an ALJ to adopt the Step Three limitations in the subsequent RFC assessment. *Thorpe v. Comm'r of Soc. Sec.*, No. 3:23-CV-2, 2023 WL 8705497, at *9 (E.D. Tenn. Nov. 20, 2023) ("[T]he ALJ is not required to provide specific accommodations for limitations in the paragraph B criteria."). Moderate limitations in paragraph B criteria are not synonymous with specific functional restrictions in the RCF because the Step

8

Three analysis and the RFC determination serve different purposes. Step Three "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006). The RFC is a distinct, subsequent determination "requir[ing] a more detailed assessment by itemizing the various functions contained in the broad categories found in Paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4. Thus, an ALJ's finding of moderate limitations in the Paragraph B criteria does not necessarily correlate to mirrored limitations in the RFC. *Bailey v Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011) ("The RFC assessment takes into account all of the relevant evidence in the case record, . . . and the ALJ was not required to specifically adopt 'paragraph B' finding in his development of a complete and accurate assessment of [the plaintiff's] mental impairment.") (citations omitted).

Plaintiff cites *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752 (N.D. Ohio 2019) in support of her argument that the ALJ erred by not including moderate limitations in the category of adapting and managing oneself in the RFC [Doc 15 p. 11]. In *Ripley*, the ALJ specifically mentioned and credited the state agency psychologists' finding that claimant was restricted to "'very short and simple instructions,' no high production quotas or fast-paced work, and 'little over-the-shoulder supervision'" but only limited the claimant to performing more than simple tasks, but less than complex tasks. *Id.* at 766. Because the ALJ found the three limitations to be well-supported and consistent with the record but then failed to include the limitations in the RFC or explain why they were not incorporated, the Court found it was reversible error. *Id.* at 767.

The Court finds this case readily distinguishable from the one at hand. Here, Plaintiff points to no explicit findings regarding her limitations that the ALJ acknowledged and credited but failed to include in the RFC. Rather, Plaintiff cites to Dr. Hopko's opinion that "Plaintiff appeared to be moderately impaired in her ability to adapt to change," as well as Plaintiff's testimony that she

9

"can't deal with changes," her function report where she stated that "she hates change, does not handle stress well, and that change is 'scary' for her," and her mental health records [Doc. 15 p. 13 (citing Tr. 58, 283 535)]. The ALJ discussed all of these things in formulating Plaintiff's RFC and did so in the context of not only her subjective complaints but also her treatment history, objective medical evidence, and assessments from mental health professionals.

To begin, in discussing Plaintiff's subjective complaints, the ALJ found claimant's testimony about her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record" [Tr. 25]. For example, the ALJ acknowledged Plaintiff's function report where she noted significant problems, but the ALJ identified that "she has also reported the ability to perform personal care needs, live with her mother and daughters, perform some household chores, count change, prepare elaborate meals[,] shop by phone and online, use Facetime to interact with sisters, make flower pins, and paint" [*Id.* at 29]. The ALJ also recognized Plaintiff's testimony at the hearing that "[s]he has not dealt well with changes since her daughter married [and] only leaves the house if she has a doctor's appointment" [*id.* at 25], but noted Plaintiff's medical health related records "indicate[d] a history of treatment with appropriate medication and psychotherapy" [*id.* at 26].

Turning to the treatment history and objective medical evidence, the ALJ discussed Plaintiff's Behavioral Health Adult Intake from April 5, 2022, that "showed a cooperative attitude, rapid speech, anxious mood, normal thought processes and content, intact memory, easily distractable attention, and fair reasoning, impulse control, judgment and insight" [*Id.* at 27]. The ALJ further noted Plaintiff's medical management intake from December 2022 where the exam "showed anxious mood, excessive speech, cooperative attitude, circumstantial thought process, normal thought content, intact memory, adequate attention, and fair reasoning, impulse control, judgment, and insight" [*Id.*]. The ALJ also considered that "[d]uring a medical management

10

appointment January 23, 2023, treatment notes showed she was mostly doing well, her social status was stable, and since the last visit, she has been medically stable" [*Id.*].

The ALJ additionally reviewed that "[o]n March 3, 2023, . . . the claimant reported improvement in anxiety symptoms but continues to have nightmares and panic attacks a couple of times per week" [*id.*]; on March 21, 2023, "the claimant reported mostly doing well[,] her social status was stable[,] and since the last visit, she has been medically stable and unchanged" [*id.* (citing Tr. 12F)]; on March 23, 2023, "the claimant reported an improvement in anxiety and panic attacks" [*id.*]; and, in June 2023, "[a]lthough the claimant has continued to report[] symptoms of anxiety including panic attacks and medication changes . . . [her exams] have only shown an anxious mood" [*id.* at 28]. He also noted that in July 2023, Plaintiff "requested a letter for insurance saying that she has anxiety, must stay home, and needs her daughter to help her . . . . [but h]er treating mental health provider . . . declined to provide the requested letter" [*Id.* (citing Tr. 14F, 16)]. The ALJ observed that "[w]ith treatment . . . the claimant has reported some improvement, and MSEs have significantly improved to only an anxious mood" [*id.* at 29] and that Plaintiff's course of treatment has been conservative [*id.* at 30].

Finally, the ALJ evaluated the persuasiveness of the mental health medical opinions in the record. 20 C.F.R. 404.1520c. He discussed Plaintiff's psychological consultative examination performed by Derek Hopko, Ph.D., on June 30, 2022, which he found unpersuasive [Tr. 30]. He also considered the opinions of the two State agency mental health consultants, which he did find persuasive [*Id.* (citing 71–89, 90–108, 111–23, 124–36)]. As for Dr. Hopko, the ALJ noted that "although Dr. Hopko noted a dysregulation in mood, the claimant was cooperative. The objective evidence in the record also showed no problem getting along well with providers and staff, no problems with grooming and hygiene, and no problems with temper control" [*Id.*]. He also pointed out that "[a]lthough [Plaintiff] has reported significant mental health problems and Dr. Hopko

11

noted emotional dysregulation and crying, treatment notes have shown improvement with treatment, and [her exams] have only shown an anxious mood with treatment" [*Id.* at 30].

In referencing the two State agency consultant opinions, the ALJ observed that "[a]though treatment notes have shown improvement with medication and therapy and MSEs have significantly improved, [Plaintiff] continued to report mental health symptoms, and despite these symptoms, [Plaintiff] has reportedly been able to live with her parents and daughters, perform some household chores, perform personal care needs, prepare elaborate meals, paint, use Facetime to visit with sisters, follow written instructions if no too long, and follow spoken instructions if very simple" [*Id.*]. The ALJ found Plaintiff to have no more than moderate limitations in the Paragraph B criteria and stated he had accommodated for such in the RFC explained in the decision [*Id.*]. As the Commissioner points out, Plaintiff does not challenge the ALJ's assessment of any of these opinions [Doc. 17 p. 6].

In addition to noting Plaintiff's ability to perform the types of activities set out above, the ALJ referenced that "since the amended alleged onset date, the claimant has only undergone conservative treatment . . . [and] has also reportedly been able to . . . follow written instructions if not too long, and follow spoken instructions if very simple" [Tr. 30]. The ALJ concluded the RFC assessment by acknowledging that "the claimant does have physical and mental impairments that have affected her ability to perform exertional and nonexertional activities," but ultimately found "that the evidence falls short of corroborating any fully debilitating impairment or combination thereof" [*Id.* at 31].

12

Case 3:24-cv-00500-DCP    Document 19    Filed 02/26/26    Page 12 of 14    PageID #: 876

Thus, unlike the ALJ in *Ripley*, the ALJ here did consider and explain why he did not include the limitations in the RFC.[4] This is not a case where the Court "simply cannot discern [why the RFC omits mental limitations] because the ALJ did not in any way address the matter." *Richardson*, 511 F. Supp. 3d at 799. Nor is this a case where the ALJ made "no mention of the claimant's mental impairment in the RFC analysis." *Shamshud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), *report and recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017).

The Court finds that the foregoing discussion demonstrates the RFC—which is limited to simple work tasks and instructions and only occasional social interaction—has substantial support in the record and explains why no additional restrictions were necessary to account for Plaintiff's moderate paragraph B limitations in the category of adapting and managing oneself. From the ALJ's analysis, the Court is able to discern that he established an accurate and logical bridge between the evidence and his conclusions. *Gilliam v. Astrue*, No. 2:10-CV-017, 2020 WL 2837260, at *3 (E.D. Tenn. July 19, 2010). The ALJ detailed Plaintiff's subjective complaints, her treatment history, function reports, daily activities, and medical opinions of record [Tr. 19–32]. Further, the ALJ emphasized that his RFC finding was based on "all symptoms" and repeated several of Plaintiff's specific mental capabilities, including that "[s]he has not dealt well with

---

[4] "Moreover, courts outside the Sixth Circuit have found that an RFC limitation to simple, routine work accommodated for a plaintiff's marked limitations in the domain of adapting and managing oneself." *Brown v. Comm'r of Soc. Sec.*, No. 3:23-CV-00638, 2024 WL 5473252, at *6 n.4 (N.D. Ohio Jan. 30, 2024), *report and recommendation adopted*, No. 3:23-CV-638, 2025 WL 959254 (N.D. Ohio Mar. 31, 2025) (citing *Self v. Berryhill*, No. 1:17-CV-1001, 2019 WL 825772, at *4-5 (M.D.N.C. Feb. 21, 2019) (finding ALJ's RFC determination "sufficiently captured [p]laintiff's marked deficit in adapting and managing herself" where ALJ limited plaintiff to "simple, routine, low-stress work with few changes and few decision[s]"), *report and recommendation adopted*, 2019 WL 1227959 (M.D.N.C Mar. 15, 2019)).

13

changes . . . only leaves the house if she has a doctor's appointment, [and] has problems with short-term memory," and noted Plaintiff's treatment for anxiety and depression disorder and panic attacks [*Id.* at 24–28]. The ALJ explicitly stated that he "accommodated for [Plaintiff's moderate limitations] in the residual functional capacity set forth in this decision" and discussed the mental impairments in the RFC section of his decision [*Id.* at 30].

After a thorough review of Plaintiff's physical and mental impairments, the ALJ concluded that Plaintiff was capable of medium work, with the ability to understand, remember, and carry out simple tasks and instructions, as well as the ability to engage in occasional social interactions. This evidence constitutes substantial evidence supporting the ALJ's RFC determination. *See Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3–4 (6th Cir. Jan. 31, 2020) (crediting the ALJ's decision to not incorporate a finding of "moderate limitations in concentration, persistence, or pace" into an RFC determination where the ALJ "specifically stated that she had considered the step three limitations in her analysis" and had considered "all of the claimant's medically determinable impairments, the claimant's statements, and all relevant medical opinions").

## V. CONCLUSION

For the reasons explained, the Court hereby **AFFIRMS** the decision of the Commissioner. The Clerk of the Court will be **DIRECTED** to close this case.

**ORDER ACCORDINGLY.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

14

Case 3:24-cv-00500-DCP   Document 19   Filed 02/26/26   Page 14 of 14   PageID #: 878